GIUSEPPE TUZZEO, Suing on Behalf of Himself and of All Other Creditors of PASQUALE PATI & SON, Who May Be Similarly Situated and Who May Come in and Become Parties and Contribute to the Expenses of This Action, Respondent, *v.* AMERICAN BONDING COMPANY OF BALTIMORE, Appellant.

First Department, December 1, 1916.

Principal and surety — bond insuring transmission of moneys to foreign countries — failure of surety to deposit moneys in court on bankruptcy of principal — when surety not liable for interest.

Where a bond running to the People of the State, given pursuant to chapter 185 of the Laws of 1907, securing the due transmission of moneys to foreign countries by copartners engaged in that business in connection with selling transportation tickets, expressly provided that the surety was not to be liable above $15,000, the surety cannot be charged beyond that sum on the default of the principal by adding to the $15,000 a charge for interest on the aggregate amount of the principal's default from the date of an adjudication in involuntary bankruptcy of the principal on the theory that the surety, not having deposited the moneys in

court upon the bankruptcy, had the use thereof and earned interest thereon, there being nothing to show that the surety had means of ascertaining how many well-founded claims would be established against it. *It seems*, however, that if the surety knew or had means of knowing that the aggregate of valid claims against the principal exceeded the penalty of the bond, it might be charged with interest if it retained the money and failed to deposit it in court so as to earn interest.

APPEAL by the defendant, American Bonding Company of Baltimore, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 13th day of May, 1916, upon the decision of an official referee.

*George B. Covington,* for the appellant.

*Samuel F. Frank,* for the respondent.

DOWLING, J.:

While the defendant has appealed generally from the judgment entered herein, the only question presented for decision is its liability for interest in the sum of $7,200 in excess of the penalty of $15,000 fixed in the bond given by defendant.

Pasquale Pati & Son were engaged in business in the city of New York, selling steamship and railroad tickets for transportation to and from foreign countries, and in conjunction therewith received deposits of money for the purpose of transmitting the same, or the equivalent thereof, to foreign countries. By chapter 185 of the Laws of 1907 they were required to execute a bond as therein provided, and on August 8, 1907, Pasquale Pati and Salvatore Pati, doing business as Pasquale Pati & Son, as principal, and the defendant American Bonding Company of Baltimore, as surety, duly made, executed and delivered to the People of the State of New York a bond in the sum of $15,000 in conformity to the statute, which was duly approved by the State Comptroller and filed in his office.

The bond recites that "We, Pasquale Pati and Salvatore Pati, copartners, doing business under the firm name and style of 'Pasquale Pati & Son' of No. 238–240 Elizabeth Street, Borough of Manhattan, City of New York, as principal, and American Bonding Company of Baltimore, a corporation organized and existing under the Laws of the State of Maryland,

and having a principal place of business at No. 34 Nassau St., City, as surety, are held and firmly bound unto the People of the State of New York in the penal sum of Fifteen thousand ($15,000) Dollars, lawful money of the United States of America, to be paid to the said People of the State of New York, their attorneys or assigns, for which payment well and truly to be made, we bind ourselves, our heirs, administrators and assigns, jointly and severally, firmly by these presents."

The condition of the bond was: "That if the above bounden Pasquale Pati and Salvatore Pati shall faithfully and diligently hold and transmit any and all moneys, or the equivalent thereof, which shall be delivered to it or them for transmission to a foreign country or countries, as provided by said chapter 185 of the Laws of 1907, and duly account for and promptly pay over all moneys, or the equivalent thereof, received by him, as aforesaid, then this obligation to be void, otherwise to remain in full force and virtue. In default thereof the parties hereto will pay all damages, costs and expenses resulting from such default, not exceeding the sum above specified." The "sum above specified" in the bond was $15,000.

Thereafter plaintiff and others (in all about 490) intrusted and delivered to Pasquale Pati & Son various sums of money (aggregating $70,113) to be transmitted by the latter to Italy, none of which was ever forwarded, but the whole amount thereof was appropriated for their own personal use by Pasquale Pati & Son. All these claimants duly proved their claims before the referee.

On or before March 23, 1908, the Patis absconded and disappeared, their business was abandoned, and they have not been since heard from. On that day a petition in bankruptcy against the Patis individually and as copartners was filed in the office of the clerk of the United States District Court for the Southern District of New York, and on May thirteenth Pasquale Pati and Salvatore Pati, individually and as copartners were duly adjudicated involuntary bankrupts. This action was commenced in July, 1913. The complaint, after setting forth the giving of the bond in question and the delivery by plaintiff to Pasquale Pati & Son for transmission to Italy the sums of $100 on January 22, 1908, and $400 on March 4,

1908, which were never transmitted, set forth: "On information and belief, between August 8, 1907, and May 13, 1908, a number of people gave and delivered to said Pasquale Pati and Salvatore Pati sums of money, amounting in all to upwards of $15,000 for the sole and express purpose of transmitting the same, or the equivalent thereof, to foreign countries; but said Pasquale Pati and Salvatore Pati did not forward said sums nor the equivalent thereof, nor any part thereof, but appropriated the same for their personal use, and have not accounted for and paid over said sums, nor any part thereof. A number of these people have already brought suit on the bond annexed hereto."

Defendant's answer admitted the making of the bond, denied knowledge or information as to plaintiff's delivery of the sums alleged by him or the failure of Pasquale Pati & Son to transmit the same, and then continued: "Defendant admits that a number of persons claiming to have deposited moneys with the said Pasquale Pati & Son for transmission to foreign countries, have claimed to defendant that said moneys have not been transmitted but have been converted by the said Pasquale Pati & Son and a number of such claimants have threatened suit; and that the aggregate amount of such claims far exceeds $15,000; and that a number of suits have already been started by persons claiming to have lost moneys through the misappropriation of the said Pasquale Pati & Son as aforesaid. Defendant alleges that it has no knowledge or information sufficient to form a belief as to whether any of the claims which have been made upon it by such claimants are just claims or not and what proportion of said claims, if any, are entitled to participate in the sum of money mentioned in the bond set forth in the complaint herein."

Upon the hearings before the referee "the defendant * * * did not cross-examine the witnesses called in behalf of the plaintiff and the claimants or make objection to their testimony and called no witnesses in opposition thereto, and the only objection made by the defendant on the hearings was as to the claim for interest on the bond." The claim of the claimants Cammarata alone was disallowed, and that upon the ground that it was not within the terms of the bond, being for the con-

version of the sums represented by separate bank books, which sums Pati & Son were to collect in Italy and transmit to New York; not being sums intrusted here to be sent to a foreign country, the condition of the obligation was not fulfilled.

By the judgment not only has defendant been required to pay the sum of $15,000, its conceded liability upon the bond (since the proven claims far exceeded that amount), but also $7,200 interest on that sum from May 13, 1908 (when the Patis were adjudicated bankrupts), to the date of the referee's report. So that instead of being bound for $15,000, as expressed in the bond, defendant has been held bound for $22,200.

It is clear, from a reading of the bond, that the total sum for which defendant obligated itself for any default of the Patis, including damages, costs and expenses, was only $15,000. If, then, the defendant could be held liable for any sum in excess of $15,000, it would be necessary to show that it had been guilty of some default, or breach of duty or violation of claimants' rights, which subjected it to an additional liability or made it liable in some way to respond in damages to the claimants. The only theory suggested for the additional liability is, that as the claims of the claimants became calculable and liquidated on May 13, 1908, upon the making of the order in bankruptcy and as those claims far exceeded in the aggregate $15,000, and as defendant failed to deposit that sum in court, but retained it in its possession and earned the interest thereupon, it should be compelled to pay over interest at the legal rate upon the bond for the benefit of the claimants.

The difficulty with this theory of liability is that there is no evidence whatever of any default upon the part of defendant justifying the imposition of payment of any amount beyond the penalty of its bond. While it is true that when this suit was begun defendant knew that there were many claimants whose money it was claimed had never been transmitted by Pati & Son, no action was begun by any of them until the present suit was started, more than five years after the bankers absconded. It does not appear when or how defendant first learned of the bankers' disappearance. It is not shown that defendant had access at any time to the bankers' books or papers, or had any means of ascertaining how well founded were the claims

asserted against them. It is not even proven that the bankers kept books or data from which the justice of the claims could have been verified or their total amount determined. There is no proof that defendant at any time before the coming in of the referee's report herein knew, should have known, or had reason to believe, that the valid claims against the bankers exceeded $15,000. It is quite true that defendant could have deposited the sum of $15,000 in court subject to the final judgment in the action, and thereupon obtained a temporary injunction restraining creditors of the principal from bringing individual suits against it, relegating them to the fund for payment. (*Illinois Surety Company* v. *Mattone*, 138 App. Div. 177.) But that imposes no duty on the surety so to do, unless it knows or has means of knowing that the aggregate of the valid, fixed and undisputed claims against the principal, within the scope of the bond, exceeds the penalty thereof. In such a case, if the surety retained the amount of the bond and failed to deposit it in court, where it might earn interest, I would think it equitable that it should be charged with interest. But that is not the case at bar.

The form in which this action was brought was settled and affirmed in *Guffanti* v. *National Surety Company* (196 N. Y. 452). Under it the judgment directs the payment by defendant to the individual creditors of their *pro rata* share of the amount of the bond, so that each claim required proof peculiar to itself. Each claimant must prove not only the deposit of the money for transmission abroad but the failure so to transmit. It was such failure for which defendant held itself ready to indemnify the creditors of the principal, but only up to a maximum amount of $15,000. This is its sole liability for the default of the principal. To impose an obligation upon it beyond that amount, whether in the form of interest thereupon or otherwise, can only be justified when there has been a default upon the part of the surety itself. Of that there is no proof in this case.

The decision and judgment will, therefore, be modified by striking out the award against defendant of interest to the amount of $7,200, thus reducing the judgment to $15,000, and by reducing the payments to the claimants proportionally.

As thus modified the judgment will be affirmed, with costs to appellant payable out of the $15,000 fund.

CLARKE, P. J., LAUGHLIN, SCOTT and PAGE, JJ., concurred.

Judgment modified as stated in opinion, and as modified affirmed, with costs to appellant payable out of the $15,000 fund. Order to be settled on notice.